# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN WESLEY RANKIN, JR., | ) |
| Plaintiff, | ) Civil Action No. 14-491 |
| v. | ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

ARTHUR J. SCHWAB, District Judge.

## I.   Introduction

Plaintiff, John Wesley Rankin, Jr. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the "Act"), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI").  The parties have submitted cross motions for summary judgment on the record developed at the administrative proceedings.  For the following reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 11) will be denied.  The Commissioner's Motion for Summary Judgment (Doc. No. 14) will be granted and the administrative decision of the Commissioner will be affirmed.

## II.  Procedural History

On April 13, 2011, Plaintiff filed an application for DIB and SSI, alleging disability beginning on March 17, 2009, due to depression, shoulder pain, back and neck pain, joint pain,

1

allergies and sinusitis.[1] (R. at 83-84). An administrative hearing was held on July 20, 2012, before Administrative Law Judge ("ALJ") Karen B. Kostol. (R. at 31). Plaintiff and a vocational expert, Eugene A. Czuczman, each testified at the hearing. (R. at 31-82).

On September 13, 2012, the ALJ issued a decision in which she determined that Plaintiff was not disabled within the meaning of the Social Security Act because he could perform a range of unskilled, low-stress, light jobs. (R. at 14-26). The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner in this case. (R. at 1-4).

Plaintiff commenced the instant action on April 16, 2014, seeking judicial review of the Commissioner's decision. (Doc. No. 1). Plaintiff filed a Motion for Summary Judgment on August 4, 2014. (Doc. No. 11). The Commissioner filed a Motion for Summary Judgment on September 4, 2014. (Doc. No. 14). These motions are the subject of this Memorandum Opinion.

### III. Statement of the Case

In his decision, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010. (R. at 16).
2. The claimant has not engaged in substantial gainful activity since March 17, 2009, the alleged onset date (20 C.F.R. § 404.1571 *et seq*., and 416.971 *et seq*.). (R. at 16).
3. The claimant has the following severe impairments: degenerative joint disease of cervical and thoracic spine, status post compression fracture of T10-T12; degenerative joint disease of the right knee; status post bilateral rotator cuff repairs; and allergic rhinitis history of sinusitis (20 C.F.R. 404.1520(c) and 416.920(c)). (R. at 16-17).

---
[1] References to the administrative record (Doc. No. 7), will be designated by the citation "(R. at __)".

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)). (R. at 18).

5. The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the type of work must: entail no climbing of ladders, ropes, or scaffolds or crawling and only occasional other postural movements; allow the claimant the option of standing or walking for 30 minutes or sitting for 30 minutes alternatively without being off task; avoid concentrated exposure to extreme cold and hot temperatures, wetness, humidity, or hazards (i.e. unprotected heights or moving machinery); entail only occasional rotation, flexion, or extension of the neck; entail only frequent overhead reaching bilaterally; be limited to simple, routine, and repetitive tasks (SVP levels 1 and 2); be limited to low stress jobs defined as having only occasional decision making required, occasional changes in the work setting, and no strict production quotas; and entail only occasional interaction with the general public, co-workers and supervisors. (R. at 18-19).

6. The claimant is unable to perform any past relevant work. (20 C.F.R. 404.1565 and 416.965)). (R. at 24).

7. The claimant was born on July 9, 1970 and was 38 years old, which is defined as a younger individual age 18-49, on the disability onset date (20 C.F.R. 404.1563 and 416.963)). (R. at 24).

8. The claimant has a limited education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964)). (R. at 24).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). (R. at 25).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)). (R. at 25).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 17, 2009, through the date of this decision. (20 C.F.R. § 404.1520(g) and 416.920(g)). (R. at 26).

**IV.     Standard of Review**

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial

evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions, he or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose

of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7

(3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. It is on this standard that the Court has reviewed the parties' cross-motions for summary judgment.

**V.     Discussion**

In his brief in support of his Motion for Summary Judgment, Plaintiff argues that the ALJ committed several reversible errors. (Doc. No. 13). Specifically, Plaintiff contends that: (1) the ALJ improperly evaluated the opinions offered by his treating physician and two state agency psychologists; (2) the ALJ failed to properly consider evidence that Plaintiff suffers from allergies and chronic sinusitis; and (3) the ALJ should have re-contacted a treating physician to seek clarification as to an ambiguity in the medical evidence. The Commissioner counters that the ALJ properly evaluated the evidence submitted and that his decision is supported by substantial evidence. (Doc. No. 15). Each of Plaintiff's contentions will be addressed in turn.

*A. The ALJ Appropriately Evaluated and Weighed the Evidence of Record With Respect to Plaintiff's Mental Impairments*

Plaintiff first contends that the ALJ improperly credited the opinions of two examining psychologists over a mental health opinion issued by his treating psychiatrist, Dr. Melissa Albert. On May 16, 2012, Dr. Albert completed a mental residual functional capacity questionnaire in which she offered a "guarded" prognosis as to Plaintiff's diagnoses of major depressive disorder (MDD), obsessive-compulsive disorder (OCD), generalized anxiety disorder (GAD), and posttraumatic stress disorder (PTSD). (R. at 668). Dr. Albert checked boxes indicating that Plaintiff was "limited but satisfactory" in his ability to remember work-like procedures, carry out short and simple instructions, maintain regular work attendance and punctuality, understand and remember detailed instructions, maintain socially appropriate behavior, and travel to unfamiliar

7

places. (R. at 668-671). Dr. Albert described Plaintiff as "severely limited" in his ability to maintain attention for two hours at a time, work in coordination or proximity to others, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without rest, respond appropriately to workplace changes, carry out detailed instructions, interact appropriately with the general public and use public transportation. (R. at 668-671). Dr. Albert concluded that Plaintiff was "unable to meet competitive standards" in several areas including his ability to ask simple questions or request assistance, accept instruction and criticism from supervisors, get along with co-workers without distracting them or exhibiting behavioral extremes, deal with normal work stress, set realistic goals or plan independently of others, and deal with stress of semiskilled and skilled work. (R. at 668-671). Finally, Dr. Albert opined that Plaintiff would likely miss work more than four times a month. (R. at 672).

As correctly noted by Plaintiff, an ALJ must generally give the opinion of a treating physician "substantial and possibly controlling weight." *Chetoka v. Colvin*, 2014 WL 295035, at *10 (W.D. Pa. Jan. 27, 2014) (citing *Johnson v. Comm'r.*, 529 F.3d 198, 201-02 (3d Cir. 2008)). However, in order to be accorded greater weight, that opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *Hagner v. Barnhart*, 57 F. App'x 981, 983 (3d Cir. 2003). An ALJ is entitled to reject the opinion of a treating physician if it is "conclusory and unsupported by the medical evidence." *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, courts have consistently held that an ALJ may grant less weight to a treating physician's opinion where it conflicts with his or her own treatment notes. *See, e.g., Millard v. Comm'r.*, 2014 WL 516525, at * 2 (W.D. Pa. Feb. 7, 2014)

8

("An ALJ . . . may give less weight to a treating physician's opinion that is inconsistent with the physician's own treatment notes."); *Chetoka*, 2014 WL 295035, at *11 (The ALJ properly concluded that the limitations assessed in the disability opinion were inconsistent with [the physician's] own treatment notes."). This is particularly true where the treating physician's opinion is expressed by way of a "check-the-box" form with no supporting rationale or narrative statement. *See*, *e.g.*, *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); *Hagner*, 57 F. App'x at 983 (noting that the ALJ properly accorded "minimal weight" to a treating physician's opinions "because they were offered on 'check-the-box' forms, were unsupported by objective findings, and were inconsistent" with his follow-up treatment notes).

In the instant case, the ALJ explained that Dr. Albert's responses on the checkbox form were entitled to "little weight" because they were inconsistent with her own treatment notes. (R. at 17). For example, while Dr. Albert checked boxes opining that Plaintiff was severely limited in numerous areas, she reported a GAF score of 59, indicating only moderate impairments.[2] (R. at 668). The ALJ also correctly observed that Dr. Albert had reported GAF scores of over 60 several times over the prior year, indicating only mild impairments.[3] (R. at 645, 646, 648). In her notes, Dr. Albert consistently described Plaintiff as cooperative and noted that he displayed relevant speech, coherent thought processes, fair to sound judgment, and that his mood was typically "good," "fair" or "okay," with congruent affect. (R. at 645-653). In light of the

---

[2] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM–IV–TR) 34 (4th ed. 2000). A GAF score of 51 to 60 indicates "[m]oderate symptons (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., fe friends, conflicts with peers or co-workers)." *Id*.

[3] A GAF score of 61 to 70 indicates that an individual has "some mild" symptoms or "some" difficulty in social, occupational, or school functioning, but generally functions "pretty well." *Id.*

generally unremarkable evidence of psychological limitations displayed in Dr. Albert's treatment notes, substantial evidence supported the ALJ's decision to afford little weight to Dr. Albert's conclusions.

Similarly, the ALJ did not err in according great weight to the opinion of a state agency consultant, Dr. Michelle Santilli, who reviewed the evidence of record and found no evidence of a severe mental impairment.[4] (R. at 17, 103-04). The ALJ accorded great weight to Dr. Santilli's findings because her opinion was "consistent with the evidence as a whole" and "was buttressed by the fact that the claimant did not seek any significant mental health treatment until April 2011, only after his claims for disability benefits were denied on multiple occasions," and displayed only "moderate, mild, and less than mild" symptoms. (R. at 17). Overall, the ALJ conducted a thorough evaluation of the medical evidence before according great weight to Dr. Santilli's opinion. In making that determination, the ALJ provided sufficient and well-reasoned grounds, and her conclusions are supported by substantial evidence.[5]

---

[4] Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527(f)(2)(I). *See also* SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.")

[5] Plaintiff also contends that the ALJ improperly relied on evidence from a state agency psychologist, Dr. Richard Heil, that is not contained in the record. This argument is unavailing. In her decision, the ALJ explained that Plaintiff had filed several prior applications for disability benefits and that a previous ALJ had concluded (based, in part, on Dr. Heil's opinion evidence) that Plaintiff had no medically determinable mental impairment at that time. (R. at 17). The prior administrative decision was properly part of the record in this case (R. at 83-98), and the ALJ appropriately considered the findings therein in making her overall disability determination. (R. at 17). *See, e.g.*, 20 C.F.R. § 404.1512(b)(5) (defining "evidence" as "anything you or anyone else submits to us or that we obtain that relates to your claim," including "[d]ecisions by any governmental or nongovernmental agency about whether you are disabled or blind"); *Zavilla v. Astrue*, 2009 WL 3364853, at *16 (W.D. Pa. Oct. 16, 2009) ("[A] prior decision as to a claimant's disability under the Act by the Commissioner is evidence under [the applicable regulations] and must be considered by the ALJ when evaluating a claim for benefits."); *Soli v. Astrue*, 2010 WL 2898798, *6 (E.D. Pa. July 10, 2010) (same).

## B. The ALJ Properly Considered and Accounted for Plaintiff's Allergies and Chronic Sinusitis

Plaintiff next asserts that the ALJ's assessment of Plaintiff's residual functional capacity ("RFC") failed to properly account for "the fact that [Plaintiff] is constantly sick." (Doc. No. 13 at 8). "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a); 416.945(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2). In making this determination, the ALJ must consider all the evidence before him. *Burnett*, 220 F.3d at 121. This evidence includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Halter*, 247 F.3d 34, 41 (3d Cir. 2001). Moreover, the ALJ's RFC finding must "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Id.* (quoting *Cotter*, 642 F.2d at 704).

Plaintiff contends that the record clearly establishes that he is constantly suffering from severe allergies and infectious diseases. As noted by the ALJ, Plaintiff's medical records indicate that he experiences severe allergies, sinusitis, allergic rhinitis, nasal congestion, facial pressures, headaches, and postnasal drip. (R. at 22, 250-52). The ALJ also noted that Plaintiff underwent multiple bilateral endoscopic sinus surgeries in an effort to reduce his symptoms. (R. at 22, 254-55). However, the presence of a diagnosis alone is not sufficient to establish the existence of disabling functional limitations. *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805,

11

808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)). To the contrary, "[d]isability is not determined by the mere presence of an impairment, but rather by the effect that an impairment has upon an individual's ability to perform substantial gainful activity." *Clemente v. Astrue*, 2011 WL 2731816, at *7 (W.D. Pa. July 13, 2011) (citing *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991)).

Although Plaintiff speculates that his constant sickness "may" create "difficulties maintaining regular attendance or maintaining attention and concentration," Plaintiff has not pointed to any medical evidence in the record to connect his sinusitis and allergies to an inability to work. (Doc. No. 13 at 10). Indeed, none of the medical professionals who examined or treated Plaintiff, including his allergist, a consulting examiner, and a treating physician, assessed any limitations on the basis of his allergies and sinusitis. (R. at 250-55, 605, 678). Moreover, as noted by the ALJ, Plaintiff's daily activities – including, for example, his voluntary exposure to allergens and nasal irritants mowing his own grass – belie the necessity for any significant environmental limitations due to his allergies. (R. at 22). Finally, the ALJ noted that none of the sampling of available jobs cited by the vocational expert involved significant exposure to environmental irritants, temperature extremes, wetness, or humidity. (R. at 18, 22, 25).

In sum, Plaintiff's arguments with respect to his allergies and sinus impairments focus entirely on the diagnosis of those impairments, rather than any resulting limitations. *See, e.g., Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[Plaintiff's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment."). In the absence of any medical evidence connecting his impairments to an inability to work, the Court concludes that substantial evidence supported the ALJ's RFC assessment.

C. ***The ALJ Reasonably Evaluated Medical Evidence Obtained From Plaintiff's Treating Physician***

Finally, Plaintiff contends that the ALJ erred in rejecting opinion evidence from Dr. Stephanie Hahn Le, his pain management physician, who opined, *inter alia*, that Plaintiff was limited to standing/walking for less than 15 minutes and sitting for 30 minutes. (R. at 23). In her decision, the ALJ noted that "it was unclear" how Dr. Hahn Le had arrived at those limitations but that they "appear to be based on the claimant's subjective complaints, which are not fully credible." (R. at 23). Plaintiff, citing SSR 96-5p, contends that the ALJ was obligated to re-contact Dr. Hahn Le to determine whether her opinion was based on her objective findings or on Plaintiff's subjective complaints. *See* SSR 96-5p (stating that "if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification as to the reasons for the opinion.").

Effective March 26, 2012, six months prior to the ALJ's decision in this matter, the Commissioner revised the social security regulations regarding an ALJ's duty to re-contact physicians. Prior to that date, the regulations obligated an ALJ to re-contact a medical source to clarify the record if the source's report "contain[ed] a conflict or ambiguity that must be resolved, [did] not contain all the necessary information, or [did] not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(e)(1). However, the new controlling regulations direct that, "if any of the evidence, including medical opinion(s) is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have." 20 C.F.R. § 404.1520b(b); 416.920b(b); *see, e.g., Toland v. Colvin*, 2013 WL 6175817, at *7 n. 3 (W.D. Pa. Nov. 25, 2013)

("As of March 26, 2012, the regulations governing an ALJ's duty to recontact a medical source have changed. Under the current regulations . . ., an ALJ "*may* recontact [a] treating physician, psychologist, or other medical source" but may instead seek further evidence from another source . . .") (emphasis added). In the instant case, the ALJ already had the benefit of a complete and adequate record on which to base her disability determination. Substantial evidence supported that determination, as well as her decision not to exercise her permissive authority to re-contact Dr. Hahn Le.

## VI.     Conclusion

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence. Therefore, the Commissioner's administrative decision will be affirmed. An appropriate order follows.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:     All Registered ECF Counsel and Parties